[No. 11301.    Department One.    January 7, 1914.]

EDWARD H. CHAVELLE, *Plaintiff*, v. ISLAND GUN CLUB *et al.*,
*Respondents*, G. H. BACON *et al.*, *Defendants*, EVERETT
CONSTRUCTION COMPANY, *Appellant.*[1]

MECHANICS' LIENS—PERSONS ENTITLED—"CONTRACTORS"—SUBCON-
TRACTORS—STATUTES—CONSTRUCTION.    A subcontractor, a dredging
company, furnishing a dredger and doing dredging work upon a
dyke at so much per day, under an oral contract with the principal
contractor, is entitled to a lien for the amount of his contract price,
under Rem. & Bal. Code, § 1129, according a lien to every person
performing labor or furnishing materials for certain structures
(including dykes), and Id., § 1139, providing that the "contractor"
shall be entitled to recover only the amount due on his contract,
after deducting all other claims for labor performed or materials
furnished, and Id., § 1141, classifying lien claimants, and fixing
their rank or order of payment, as follows:    (1) laborers, (2) ma-
terialmen, (3) subcontractors, and (4) contractors; since it was
the intention to provide a lien for every person furnishing material
going directly into the structure or performing labor upon it, and
"contractor" is used in its generic sense and includes subcontractors
as well as the principal contractors.

SAME—SUBCONTRACTORS—CONTRACTS—PAYMENT BY DAY.    The fact
that a subcontractor is to be paid by the day does not affect his
right to a lien for the amount due according to the terms of his
contract.

SAME—NOTICE OF LIEN—SUBCONTRACTORS.    Under Rem. & Bal.
Code, § 1147, requiring the lien laws to be liberally construed, a sub-
contractor's notice of lien is not void by reason of failing to desig-
nate him as a subcontractor, *eo nomine*, where the facts alleged
showed his relation.

SAME—SUBCONTRACTORS—AMOUNT OF CLAIM.    A subcontractor's
lien for the amount due under the terms of his contract cannot
be sustained for a sum in excess of the amount of the principal con-
tract price.

SAME—PROPERTY LIENABLE—SEPARATE INTERESTS.    Where several
parties were interested in the real estate, which was under contract
of sale, only the interests of the purchasers are subject to a me-
chanics' lien for work done under a contract made by the purchasers.

[1]Reported in 137 Pac. 511.

SAME—NOTICE—SUFFICIENCY. A lien notice designating a gun club as the owner, is not fatally defective, where it was alleged that it was a voluntary association consisting of several persons who were named.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered November 13, 1912, upon sustaining a demurrer to the cross-complaint, dismissing an action to enforce liens for the construction of a dyke. Reversed.

*Coleman, Fogarty & Anderson*, for appellant.

*E. H. Kohlhase*, for respondents.

ELLIS, J.—This action was instituted by one L. C. Hall, for the purpose of foreclosing a lien upon certain premises in Skagit county, owned by the defendants Bacon. The Island Gun Club, Suess and wife, Campbell and wife, and Stormfeltz and wife, were made defendants as holders of a contract for the purchase of the premises from the Bacons. The Everett Construction Company, a corporation, was made a defendant because of its having previously filed a notice of claim of lien against the same premises. It filed an answer and cross-complaint, to which a demurrer was sustained. In the meantime, Hall had been adjudged a bankrupt, and Edward H. Chavelle, as trustee in bankruptcy, was substituted as plaintiff. From an order dismissing its cross-complaint, the defendant Everett Construction Company appeals.

The facts admitted by the demurrer to the cross-complaint are as follows: On May 9, 1910, Hall, under a written contract with the defendants Suess, Campbell, and Stormfeltz, and the Island Gun Club, entered upon the work of constructing a dyke around the property in question. The Island Gun Club is an unincorporated association, composed of the defendants Suess, Campbell, and Stormfeltz. In carrying out his contract, the principal contractor, Hall, entered into an oral agreement with the appellant, Everett Construction Com-

pany, whereby that company was to do the work of dredging, furnish its own dredger and operating crew, and supervise the building of the dyke, for the sum of $40 a day of nine working hours. Hall completed the dyke, performing work alleged to be of the value of $8,016.87, of which he received $4,750, leaving a balance unpaid of $3,266.87. The appellant, under its oral agreement with Hall, furnished the dredger and crew for a period of time sufficient to entitle it to $2,478.46, of which $400 has been paid, leaving a balance owing to it of $2,078.46, with interest. On October 24, 1910, it filed its notice of lien against the premises; and on November 9, 1910, Hall filed his notice of lien. Subsequently, the present action was begun in the lower court, with the result above noted. The sole question presented for our consideration is whether or not the oral agreement entered into between Hall and the appellant here and the work performed thereunder was such as to entitle the appellant to a lien on the premises.

The statute under which the appellant claims the right of lien contains the following provisions material to this inquiry (references are to the section numbers of Rem. & Bal. Code):

"Sec. 1129: Every person performing labor upon or furnishing material to be used in the construction, alteration or repair of any . . . dyke . . . has a lien upon the same for the labor performed or material furnished by each, respectively, whether performed or furnished at the instance of the owner of the property subject to the lien or his agent; and every contractor . . . or person having charge, of the construction, alteration or repair of any property subject to the lien as aforesaid, shall be held to be the agent of the owner for the purposes of the establishment of the lien created by this chapter."

"Sec. 1139: The contractor shall be entitled to recover upon the claim filed by him only such amount as may be due him according to the terms of his contract, after deducting all claims of other parties for labor performed and materials furnished . . ."

"Sec. 1141: In every case in which different liens are claimed against the same property, the court, in the judgment,

must declare the rank of such lien or class of liens, which shall be in the following order:

"1.   All persons performing labor;
"2.   All persons furnishing material;
"3.   The subcontractors;
"4.   The original contractor."

"Sec. 1147: The provisions of law relating to liens created by this chapter, and all proceedings thereunder, shall be liberally construed with a view to effect their objects." (P. C. 309 §§ 53, 73, 77, 89).

A reading of these sections, and an application of the liberal rule of construction prescribed by the section last quoted, induces the view that it was the intention of the law makers to provide a lien for every person furnishing materials going directly into the given structure, or performing labor directly upon it. The provision first quoted (§ 1129) accords a lien to every person performing labor or furnishing materials, and § 1141 classifies all persons doing either, and prescribes the rank of their liens. Section 1139, taken in connection with § 1141, must be construed as using the word "contractor" in its generic sense, and including both the principal contractor and subcontractors, else there would be no lien for a subcontractor as such, and no lien whatever for a subcontractor except as he might also be a laborer or a materialman. The latter cannot be the intention, because, in § 1141, the subcontractor's lien is subordinated to that of laborers and materialmen, which would be wholly senseless unless there were a distinction between the lien of a subcontractor and that of a laborer or materialman.

Construing these three sections together and giving a meaning to each, it is clear that a subcontractor as such is entitled to a lien for labor or materials or both, furnished and paid for by him in the performance of some specific part of the work under contract with the principal contractor, as distinguished from the lien prescribed for laborers and materialmen as such. The recovery on a subcontractor's lien is,

therefore, like that of any other contractor given under § 1139 "according to his contract;" otherwise it has no independent existence, though expressly subordinated to, and hence distinguished from, the liens of laborers and materialmen under § 1141. It follows that the only sensible distinction between the lien accorded to the principal contractor and the subcontractor is found in the fact that, in marshaling liens, the latter ranks the former and receives a preference in the distribution of the proceeds of the sale of property subject to the liens on foreclosure, just as the latter is subordinated to the liens of laborers and materialmen as such.

There is, and can be, no distinction as to the character of the items going to make up the lien claim of the principal contractor and that of a subcontractor without destroying the lien of the latter as a distinct lien. Each is entitled to recover upon his lien claim the amount due according to his contract, "after deducting all claims of other parties for labor performed or materials furnished." Unquestionably, the principal contractor who undertakes a given work and contracts to furnish labor, materials, tools and instrumentalities for the purpose, is entitled to a lien for all labor performed and materials furnished and paid for by him in the performance of his contract; and the amount of his lien is determined by the amount due him according to the terms of his contract and neither this amount nor the lienability of his claim is affected by the fact that he also agrees to furnish, as part of the consideration for his contract on the given terms, the instrumentalities and tools used in the work and by which the labor is made effective and the materials handled, molded, fitted and adjusted to the work. In this regard, there can be, as we have seen, no distinction between the principal contractor and a subcontractor without destroying the subcontractor's lien. This construction is the only one which accords a meaning and gives an effect to every part of the statute. As said in *Powell v. Nolan,* 27 Wash. 318, 67 Pac. 712, 68 Pac. 389, at page 341:

"The other sections of the statute which we have cited clearly indicate that a subcontractor or contractor is to be regarded as performing labor upon the building, and is entitled to file lien claims therefor the same as laborers and materialmen, but subordinate to such liens. Construing the act, as we must, so as to give effect to every part thereof, we must hold that the contractor has a lien for the contract price, irrespective of the fact that he performed no service further than overseeing the construction of the building according to his contract."

Under the statute so analyzed and construed, we think it plain that the appellant here was a subcontractor and, as such, was employed under contract with the principal contractor to furnish the labor and the appliances necessary to make that labor effective in doing the dredging, and to supervise the work. It follows that it was entitled to a lien for the contract price, namely, $40 for each day of nine hours, after deducting all claims of other parties for labor performed or materials furnished (§ 1139) and that its lien should rank third (§ 1141) in participating in the proceeds of the sale of the property, subject to all liens of laborers and materialmen employed in constructing the dyke.

The mere fact that the compensation was computed by the day cannot have the effect of changing the appellant's status as a subcontractor. Under the facts as pleaded and set up in the lien, it contracted to perform a specific part of the work, namely, the dredging. The mode of computing the payment on the contract cannot reasonably be held to affect the character of the contract. While the complaint and lien notice do not designate the appellant as a subcontractor *eo nomine*, they do set up the facts which make the appellant a subcontractor and entitle him to a lien as such. This, under the liberal rule of construction required by § 1147 above quoted, must be held sufficient.

It may be objected that, if the contract amount be held to fix the amount of the subcontractor's lien, as in the case of the principal contractor, there might be danger that, by

collusion with the principal contractor, a subcontract or a number of subcontracts could be let for an amount in excess of the contract price for which the principal contractor had agreed to perform the work, and the owner's property thus charged with an amount in excess of what he contracted to pay. Such a danger is more apparent than real, since such subcontracts would be fraudulent on their face, and if such a situation should develop, it would present such conclusive evidence of fraud as to defeat all of the liens. No court would sustain subcontract liens in excess of the principal contract price.

Our construction of the statute is inferentially sustained by the decision in *Smyth v. Lance & Peters*, 52 Wash. 560, 100 Pac. 995. While in that case the opinion refers to the lien as a laborer's lien, the facts set out clearly show that Smyth, the lien claimant, was a subcontractor. He took a contract to perform a distinct and divisible part of the work of constructing a building, namely, to do the plastering. He agreed to furnish the men and presumably the tools also, and do the work, and was to receive as pay therefor the amount he paid his men, plus $7 a day for himself and 10 per cent of the amount he paid the men. He was allowed a lien not only for his own compensation, but for the money which he had paid to the men who assisted him in the work. His recovery was according to his contract.

The cases relied upon by respondents: *Hall v. Cowen*, 51 Wash. 295, 98 Pac. 670, and *Gilbert Hunt Co. v. Parry*, 59 Wash. 646, 110 Pac. 541, Ann. Cas. 1912 B. 225, are not apposite. In the first case, the lien claimant furnished no materials and performed no labor. He merely rented scrapers to the original contractor as tools for doing the work. He was neither a laborer, a materialman, nor a subcontractor, within the terms of the statute. In the second case, *Gilbert Hunt Co. v. Parry*, the same situation was presented. Practically every item in the lien claim was for tools and appliances and supplies for running machinery. The things furnished

were not materials going into the work, hence did not fall within the terms of the statute.

According to the allegations of the complaint and the appellant's answer and cross-complaint, the Bacons were not parties to the · contract with Hall to construct the dyke, hence only such interest in the land as the Island Gun Club, Suess and wife, Campbell and wife, and Stormfeltz and wife had under their contract of purchase from the Bacons can be subjected to the appellant's lien. The claim that the lien notice was fatally defective in that it designated only the Island Gun Club as a party and not Suess, Campbell and Stormfeltz, individually, is without merit, since it is alleged that the Island Gun Club is a voluntary association composed of these persons. Doubtless, if the decision of the trial court had been based upon that ground, an amendment would have been made to include the parties interested by name. We take it, however, from the argument and from the record, that the trial court held the lien invalid because of the fact that the appellant, by its contract, was obligated to furnish not only the labor, and superintend the work, but also the instrumentality, namely, the dredger by which that labor was made effective. In this, as we have seen, the trial court was in error.

The judgment is reversed, and the cause is remanded for reinstatement and further proceedings in accordance with the views here expressed.

CROW, C. J., MAIN, GOSE, and CHADWICK, JJ., concur.