[No. 14975. Department Two. April 1, 1919.]

E. S. BISHOP, *as Bishop Contracting Company, Respondent*, v. T. RYAN CONSTRUCTION COMPANY *et al., Appellants.*[1]

COUNTIES (46) — CONTRACTOR'S BONDS — NOTICE OF CLAIM — SUFFICIENCY. One general notice of claim against two bonds of a contractor on county road work substantially complies with the statute, Rem. Code, § 1161-1, and is sufficient although it covers two contracts and bonds for distinct portions of the improvement, where the items charged against each project were segregated, all the parties were the same in each case, and the work was sublet to the claimant to be performed as a whole.

SAME (46) — PAYMENT (14) — APPLICATION. Such a claim is not rendered uncertain by acknowledgment of a cash payment without specifying its application; since the law would make the application *pro rata.*

COUNTIES (46) — CONTRACTOR'S BONDS — LABOR — NOTICE OF FURNISHING — STATUTES. A subcontractor to haul all the sand, gravel and cement used on county road work agrees to furnish labor, and is not within Rem. Code, § 1159-1, requiring notice within ten days to the principal contractor of the furnishing of "materials, supplies or provisions."

SAME (46) — CONTRACTOR'S BONDS — LIABILITY — REASONABLE VALUE OF SERVICE. In an action on a contractor's bond, by one furnishing labor on county road work, the increased cost for hauling, provided for in the contract in case of breach, is recoverable only so far as it is reasonable and not as liquidated damages, since the action is to recover a just charge for the services performed.

[1]Reported in 180 Pac. 126.

APPEAL AND ERROR (117, 389)—OBJECTIONS TO COMPLAINT—AMEND-
MENTS REGARDED AS MADE.  Upon raising the question of the suf-
ficiency of a complaint for the first time on appeal, only defects
incapable of amendment showing plaintiff had no cause of action
are material, as the complaint will be considered amended to con-
form to the proof.

PLEADING (208) — WAIVER OF OBJECTIONS — RULING ON MOTIONS.
Proceeding to trial on the merits, after overruling a motion to
require the plaintiff to separately state his causes of action, waives
the objection.

CONTRACTS (154)—BREACH—ACTS CONSTITUTING.  Refusal to make
a monthly payment due for hauling on county road work, or to
determine the amount due, constitutes a breach of the contract, war-
ranting a cancellation.

CONTRACTS (125)—RESCISSION — TIME FOR — LACHES.  Failure to
immediately cancel a contract for hauling on county road work,
upon nonpayment of a sum due, was not a waiver of the right to
thereafter cancel at any time prior to compliance or offer of pay-
ment.

CONTRACTS (120)—RESCISSION—WAIVER.  Continuing work for a
few days for the convenience of the employer does not waive the
employee's cancellation of a road hauling contract for breach in
failing to make payments.

CONTRACTS (154)—BREACH—ACTS CONSTITUTING.  After notice of
cancellation of contract for nonpayment of installments due, pay-
ment is too late to keep the contract in effect.

COUNTIES (46) — CONTRACTOR'S BONDS — LIABILITY — REASONABLE
VALUE.  Where the first hauling under a contract for county road
work was over the extreme distances, it is not unreasonable in an
action on the contractor's statutory bond, to allow recovery for
early work at a higher price, as fixed in the contract for liquidated
damages in case of a breach terminating the contract before com-
plete performance.

SAME (46).  The liability of the principal contractor and bonds-
men on county road work, upon the statutory bond given to secure
laborers and materialmen, being statutory for the reasonable value
of the service, is irrespective of the form of the contract between
the claimant and his immediate employer.

SAME (46).  Such liability permits recovery for services per-
formed after the claimant had elected to quit work and cancel the
contract, where the subcontractor employing him permitted the work
and received the benefit of it, a promise to pay the reasonable value
being implied.

CUSTOMS AND USAGES (4, 6) — EVIDENCE (159) — ADMISSIBILITY.
Where a contract for hauling on road work was ambiguous as to
whether fractions of a mile haul were to be treated as a full mile,
it is proper to admit evidence to show the custom.

Appeal from a judgment of the superior court for
Snohomish county, Alston, J., entered April 10, 1918,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court. Affirmed.

*C. H. Graves* and *Beechler & Batchelor*, for appellants.

*Frank E. Green* (*Shepard, Burkheimer & Burkheimer*, of counsel), for respondent.

FULLERTON, J.—On June 26, 1916, the Cascade Construction Company entered into a contract with the county of Snohomish, by the terms of which it undertook to reconstruct and hard-surface a county road, extending from the city of Stanwood, in such county, westerly to the county line, a distance of nine-tenths of a mile; the improvement being known and referred to under the contract as Project No. 16, of Snohomish county. On entering into the contract, the contractor gave a bond to the county, with the United States Fidelity & Guaranty Company as surety, conditioned for the faithful performance of the contract; the bond being further conditioned to secure the payment of all laborers, mechanics, subcontractors and materialmen who should perform labor upon or furnish material for such work, and all persons who should supply the principal contractor, the laborers, mechanics and subcontractors thereon, with provisions and supplies for carrying on the work, giving to all such persons a right of action upon the bond in the case of a failure of payment.

On April 16, 1917, the county entered into a second contract with the company named, for the improve-

ment in a similar manner of another road extending southerly from East Stanwood to the town of Florence, a distance of 2.57 miles. To secure the faithful performance of this contract, the contractor also gave a bond to the county with the guaranty company before named as surety, the bond being conditioned in the same manner as the first bond mentioned. This improvement was referred to in the contract and known on the county records as Project No. 15, of Snohomish county.

In April, 1917, "and before the 20th day of said month," the Cascade Construction Company sublet the work of both contracts to the T. Ryan Construction Company. The terms of this contract are not in the record. The fact appears by a general allegation in the complaint to that effect and its admission in the answers.

After entering into the contract with the Cascade Construction Company, the T. Ryan Construction Company entered into a written contract with the respondent Bishop, by the terms of which Bishop agreed to haul all of the sand, gravel, and cement used in the construction of the roads, from the bunkers of the contracting company to such places on the road as it should be needed, and also to haul all of the waste from the bunkers to such portion of the first mile of the roads described, as the construction company should direct. For these services, the contract provided a payment of forty cents per cubic yard for all sand and gravel, seven cents per barrel for cement, and twenty cents per cubic yard for waste. The quantity of sand, gravel, and cement was to be ascertained by the measurements of the county engineer in charge of the work. The manner of measuring the waste was

not indicated. The contract also contained these further provisions, namely:

"Party of the first part agrees to furnish an average of at least 150 cubic yards of sand and gravel each day after the plant is in full operation.

"Party of the first part agrees to keep the road in a good passable condition at all times with the assistance of second party and agrees not to tear up the road bed for more than 1000 feet ahead of material, that has been placed along the road.

"Party of the first part agrees to furnish sufficient men to help to load the cement in the trucks and to take care of cement after it has been dumped on the road, the truck men of said second party to assist in loading and unloading. Party of the second part agrees to furnish at all times sufficient trucks and truck men to promptly move all material as directed by said first party.

"If the party of the first part fails in any part of this agreement, party of the second part reserves the right to cancel this contract upon three (3) days' written notice and in such event he shall be entitled to collect the sum of twenty-five cents per cubic yard per mile hauled from the bunkers for all material theretofore hauled provided that in such event from the gross sum so due at such rate there shall be deducted the sums theretofore paid to said party of the second part by said first party on account of such hauling.

"If the party of the second part fails in any part of this agreement or fails to promptly pay and discharge all labor and material bills incurred by him upon such work, then said party of the first part shall have the right to cancel this contract upon three (3) days' written notice and said second party shall forfeit as agreed liquidated damages all sums due and unpaid to him at said time on account of this contract and provided further that said second party shall furnish to said first party on the 1st of each month satisfactory evidence of the payment of all labor and material bills incurred by him upon such work thereto-

fore and said first party shall at all times have the right to pay any of such labor and material bills as may remain unpaid and deduct the amount so paid from any sums due or to become due to said second party under this contract.

"The party of the first part agrees to pay the party of the second part all money earned to date on the first of each month, the amount to be paid to be ascertained from the report of the county engineer. If no paving is laid during the first month the amount due the second party on said hauling for said month is to be mutually determined subject to final adjustment upon completion of said work."

Shortly after the execution of the contract, Bishop entered upon the performance thereof, and continued thereon until the last of April, 1917, at which time he demanded of the T. Ryan Construction Company, payment for the hauling then performed, claiming an amount due of $500. The construction company refused to pay him anything upon the account, or to determine the amount earned in the manner provided in the contract. Bishop continued the work of hauling until May 15th, when another demand was made for the sums earned prior to the first day of that month. On this demand, he was paid $90. On the 16th of May, he served a notice of forfeiture under the forfeiture clause of his contract, and on the 19th day of the month ceased further hauling under the terms of the contract. He did not immediately cease hauling, however, but continued for some days longer, because, as he testified, no trucks were employed to take his place, and he did not wish to force the construction company to stop work upon its contract. On May 21st a further payment of $700 was made to him.

On May 26th, 1917, a written demand was made by Bishop upon the construction company for the payment of the balance claimed to be due, stated by him

to be $1,238.25. . This sum was reached by applying the rates fixed for the hauling under the forfeiture clause of the contract. Payment being refused, he filed a notice of claim with the county against the bonds of the principal contractor, and caused copies thereof to be served upon the two construction companies. This notice was in the following form:

Everett, Washington, June 1st, 1917.

To the Honorable BOARD OF COUNTY COMMISSIONERS OF SNOHOMISH COUNTY,
    and
To the Honorable COUNTY ENGINEER OF SNOHOMISH COUNTY,

Everett, Washington.

Gentlemen:

NOTICE IS HEREBY GIVEN, that the undersigned, doing business under the name and style of Bishop Contracting Co. has a claim in the sum of Twelve Hundred thirty eight and 25/100 Dollars ($1,238.25) against Cascade Const. Co. and Ryan Const. Co. and United States Fidelity and Guaranty Co. bondsmen on contract for construction of Bond Prop. No. 15 and 16 Road.

Said claim consists of hauling sand and gravel as follows:

Proposition No. 15:

| | | | | |
|---|---|---|---|---|
| 1207½ cu. yds. @ | $0.75 | | | $905.63 |
| 185½ " " " | .50 | | | 92.75 |
| 717½ " " " | .25 | | | 179.37 |

Proposition No. 16:

| | | | | |
|---|---|---|---|---|
| 693 cu. yds. @ | .75 | | | 519.75 |
| 661½ " " " | .50 | | | 330.75 |

|  |  |
|---|---|
|  | $2,028.25 |
| By cash on account | 790.00 |
| Net amount due and unpaid | $1,238.25 |

Bishop Contracting Company
By E. S. Bishop

In January, 1918, the respondent began the present action against the construction companies and the bonding company to recover upon the claim. The complaint was divided into two causes of action. In the first, the respondent set forth the contracts be-

tween the county and the Cascade Construction Company, the execution of the bonds by the guaranty company, the subletting of the contract to the T. Ryan Construction Company, the contract between the T. Ryan Construction Company and himself, the partial performance of the contract and its breach by the T. Ryan Construction Company, and its failure to pay the amounts earned thereunder, the claim against the bonds, and averred there was due on account thereof, after applying the credits, the sum of $878.50.

For his second cause of action, the respondent repeated by reference the allegations of his first cause of action, and then alleged that, from the 20th day of May, 1917, to and including the 24th day of the same month, at the instance and request of the T. Ryan Construction Company, he hauled sand, gravel, and waste on Project No. 15, amounting in the aggregate to 420 cubic yards, the service being of the reasonable value of $299.25, and on Project No. 16, sand, gravel, and waste to the aggregate of 80½ cubic yards, the service being of the reasonable value of $60.37; that he had not been paid for the service rendered, and that he had filed a notice of claim with the county, against the bond of the principal contractor, "which said written claim includes the amounts claimed by plaintiff in his first cause of action herein." The prayer was for judgment against all of the defendants for the aggregate of the several sums alleged to be due.

The defendants appeared in answer to the summons and moved the court for an order,

"1st. Requiring the plaintiff to separately state the alleged causes of action set forth in the plaintiff's alleged first cause of action set forth in the complaint herein. 2nd. Requiring the plaintiff to separately state the alleged causes of action set forth in the plain-

tiff's alleged second cause of action set forth in the plaintiff's complaint herein.''

The motion was overruled; whereupon the defendant T. Ryan Construction Company answered separately, admitting in substance all of the allegations of the complaint, save the allegation that it had breached the hauling contract and the allegation that the respondent had discontinued work under the contract on the 19th day of May, 1917. For an affirmative defense, it alleged a breach of the contract on the part of the respondent. The other defendants answered jointly, their answer being the same in substance as the answer of the T. Ryan Construction Company. Replies were filed, denying the affirmative allegations of the answers. On the issues as thus made, the action was tried by the court, sitting without a jury, and resulted in a judgment in favor of the respondent for the full amount claimed, with attorney's fees and costs. The defendants appeal.

The appellants Cascade Construction Company and United States Fidelity & Guaranty Company contend that, as to them, the complaint fails to state a cause of action. The contention is founded upon three principal reasons; first, that the notice of claim against the bond, filed with the board of county commissioners, does not comply with the statutory requirements and is insufficient to charge the bondsman; second, that no notice was served on the principal contractor by the respondent within ten days of the time he commenced work under his contract, or at all; and third, that the claim sued upon is a claim for liquidated damages or penalty arising from a breach of the contract and does not come within the provision of the statute granting laborers, materialmen, and others, a right of action upon the bond.

The provisions of the law relating to giving of bonds to secure the performance of public works are found in Remington's Code at §§ 1159 to 1161-1. After requiring the giving of such bonds, prescribing the conditions thereof, and giving to laborers, material-men, subcontractors and others, a right of action on the bond, the code provides that no such person shall have a right of action thereon, unless, within thirty days after the completion of the work and its accept-ance by the public authority authorizing the same, such person shall file with such public authority,

"A notice in writing in substance as follows:

"To (here insert the name of the state, county or municipality or other public body, city, town or dis-trict):

"Notice is hereby given that the undersigned (here insert the name of the laborer, mechanic or subcon-tractor, or materialman, or person claiming to have furnished labor, materials or provisions for or upon such contract or work) has a claim in the sum of ————— dollars (here insert the amount) against the bond taken from ————— (here insert the name of the principal and surety or sureties upon such bond) for the work of ————— (here insert a brief mention or description of the work concerning which said bond was taken).

"(Here to be signed) —————."

Rem. Code, § 1161-1.

A further provision requires that the notice be signed by the person making the claim, and a still further provision permits the allowance of a reason-able attorney's fee in any suit or action brought to recover on the bond.

The notice of claim given by the contractor to charge the principal contractor and its bondsman we have set forth in the statement. It is claimed that the notice is insufficient, both in form and substance,

the principal objection being that it is, to use the language of counsel, "a joint, unsegregated claim against two distinct, separate bonds and improvements" and "fails to designate upon which contract it is based."

But we think an examination of the notice clearly indicates that it is something more than this language implies. It will be remembered that the works contracted to be performed were known upon the county records, and were described in the original contracts as Project No. 15 and Project No. 16. It will be remembered also, that both projects were let to the same contractor and that the same surety guaranteed the performance of each contract; that the principal contractor performed no part of the work, but sublet it to another to be performed as a whole, and that that other in turn sublet to the respondent a substantial part of the whole work. The notice states with distinctness the number of cubic yards of sand and gravel hauled upon each project, the prices charged according to the varying scale, and the sum total of each item. While these items are not summarized, it is but a matter of computation to summarize them, and thus ascertain the amounts chargeable to each separate bond. It is true, but one claim was filed, but this was not misleading. The same contractor and the same bondsman were liable upon both projects, and one general notice which specified the amount claimed on each project was a substantial compliance with the statute.

But it is said that the application the respondent made of the payments upon the account rendered the amounts due uncertain. We cannot accept this conclusion. True, the respondent in his notice added together the sums earned under each contract and from

the total subtracted the payments. But if this was an application at all, it was an application *pro rata,* an application the respondent had a right to make in the absence of a direction to apply to a particular account, by the payor. If it was not an application, then the law will make the application, and in neither event can the appellants complain. We see no reason, therefore, for saying that the complaint is fatally defective for want of a plea of a sufficient notice.

The next contention under this head is that there is no allegation in the complaint that the respondent served a notice on the principal contractor within ten days after he commenced the work of hauling, notifying it of the commencement of the work. The statute on which the contention is founded is found at § 1159-1 of the code (Remington's), and reads as follows:

"Every person, firm or corporation furnishing materials, supplies or provisions to be used in the construction, performance, carrying on, prosecution or doing of any work for the state, or any county, city, town, district, municipality or other public body, shall, not later than ten days after the date of the first delivery of such materials, supplies or provisions to any subcontractor or agent of any person, firm or corporation having a subcontract for the construction, performance, carrying on, prosecution or doing of such work, deliver or mail to the contractor a notice in writing stating in substance and effect that such person, firm or corporation has commenced to deliver materials, supplies or provisions for use thereon, with the name of the subcontractor or agent ordering or to whom the same is furnished and that such contractor and his bond will be held for the payment of the same, and no suit or action shall be maintained in any court against the contractor or his bond to recover for such material, supplies or provisions or any part thereof unless the provisions of this act have been complied with."

It is our opinion that this statute has no application to the respondent's situation. It will be observed that the notice is required only of those furnishing materials, supplies or provisions to the subcontractor or agent. The respondent in no sense agreed to furnish either materials, supplies or provisions. He contracted to do hauling, that is, to furnish labor, and the statute does not require notice in such cases. The cases of *National Surety Co. v. Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337, and *Hurley Mason Co. v. American Bonding Co.*, 79 Wash. 564, 140 Pac. 575, cited and relied upon by the appellants, are not in point. In the first of these cases, the lien claimant furnished teams with drivers for a stated consideration per day; and in the second, the claimant leased to the contractor a pump and hoist-derrick for a stated consideration. It was held in each case that this was the furnishing of supplies, and was thus within the terms of the statute giving a right of action upon the bond of the contractor for the furnishing of supplies. Being a contract to furnish supplies, the statute relating to notice of the time of commencing to furnish them would have application; but such is not the situation in the present case. The respondent did not lease or rent any part of his equipment to the subcontractor. His contract was to convey material from the subcontractor's bunkers to such places on the highways contracted to be improved as the subcontractor should direct. While equipment was required to move the material, there was no furnishing or leasing of the equipment to the use of the subcontractor, and consequently no furnishing of materials or supplies for which a notice must be given.

The final contention under this head is that the action is one to recover liquidated damages, or a pen-

alty, and as such is not chargeable against the bond. It is true, the respondent is seeking to recover from the subcontractor an increased price for the hauling performed over what he would have been entitled to recover had there been no breach of the contract; but the action is, in its essence, even as against the subcontractor, an action to recover for services performed, and this is its entire effect in so far as the appellants now complaining are interested in it. The respondent recovers against the bond because of the statute, which gives him the right to resort to the bond for the value of the services rendered to a subcontractor and for which the subcontractor does not pay. But the contract between the party performing the service and the subcontractor does not, in all cases, fix the amount of such recovery. It is allowed to control only in so far as it is reasonable, and in so far as it is a just charge for the service performed—and the rule is the same whether the amount of the charge arises out of a breach of contract or out of performance in full at a stipulated price. In other words, neither the principal contractor nor his bondsman can be injured by the terms of the contract between his subcontractor and one agreeing to furnish services or labor; and since they cannot be injured by it, they cannot complain of its terms. It is true, the complaint in this instance does not allege that the charge the respondent makes for his services is a reasonable charge, but this is not an objection now open to the appellants. They raise the question of the sufficiency of the complaint for the first time in this court, and can thus take advantage of those defects only which are incapable of amendment—those defects which show that the plaintiff has no cause of action. This is not such a defect. It is a defect capable of being cured

by amendment, and the court, before allowing it to
prevail, will look to the proofs and ascertain whether
the proofs show the reasonable value of the services,
and if it so finds, will consider the complaint amended
to correspond with the proofs.

It is complained by all of the appellants that the
court erred in overruling their motion to require the
respondent to separately state his causes of action, but
whether there was error in the ruling of the court in
this regard we shall not inquire. After the trial court
overruled the motion, the appellants answered over
and proceeded to trial upon the merits of the action.
This was a waiver of the objection, even if it was
well taken in the first instance. *Port Townsend v.
Lewis*, 34 Wash. 413, 75 Pac. 982.

On the merits of the controversy the principal con-
tention is over the question which of the parties had
breached the contract. On this question, we do not
feel called upon to review the evidence at length. Un-
der the contract the respondent was entitled to be paid
on the first day of May, 1917, for all of the hauling
he had done in the previous month, yet the subcon-
tractor not only refused to pay him the amount he
claimed to be due, but refused to "mutually deter-
mine" the amount due and pay him such sum as might
be found due upon such determination. This was
clearly a breach of the contract entitling the respond-
ent to cancel the agreement. That he did not do so
at once, was not a waiver of the right. The privilege
was open to him at any time prior to the time the sub-
contractor complied or offered to comply with the
agreement, and no payment or offer of payment was
made until after he had served notice of his intended
cancellation. Payment after that time was too late.
Nor did the respondent waive the cancellation by con-

tinuing to haul for a few days after giving notice of his cancellation of the contract. He testified, and his testimony is all that there is upon the question, that he continued to so haul because the contractor was then actively engaged with a crew of men in the prosecution of the work, and no one else had been employed to take his place and he did not wish to cause any greater annoyance or loss to the contractor than he could reasonably avoid. Clearly, this ought not to be held a waiver of his cancellation of the contract, nor to place him in the attitude of breaching the contract when he subsequently ceased to haul. It was but the exercise of common decency, and certainly the law will be slow in penalizing such an act.

The judgment of the trial court allowed the respondent to recover at the rate prescribed in the contract in the case of a breach thereof by the subcontractor, namely, at twenty-five cents per cubic yard per mile of haul. It is contended that this is an excessive charge, and not warranted by the evidence, either as against the subcontractor or the principal contractor and his bondsman. As to the subcontractor, the evidence furnishes a reason for this particular clause of the contract. It appears that a terminal of one of the roads to be improved closely approximated a terminal of the other. Near these terminals, the subcontractor erected his bunkers, from which the sand and gravel was to be hauled. The contractor commenced work on the opposite terminals of the roads, and as a consequence, the first of the hauling was over the extreme distances. While a price of forty cents per cubic yard might be a reasonable price for the work of hauling, taken as a whole, it might be too small a price for the work if it was stopped before the party doing the hauling had the benefit of the shorter dis-

tances. It was this contingency the provision of the contract relating to its breach was intended to guard against, and so viewed it was in no sense an unreasonable provision. Whether, therefore, it be called a provision for liquidated damages or a provision for a penalty, the respondent may recover the amount thereof from the subcontractor, unless it is shown to be so far unreasonable as to be unconscionable. There is no such showing in the record. On the contrary, there was evidence to the effect that the rate fixed was a reasonable rate for the hauling actually performed, and nothing on the other side.

As to the principal contractor and his bondsman, we have heretofore attempted to show that their liability depends upon considerations into which the question of forfeiture or penalty does not enter. Their liability being statutory, and depending upon the fact of service and the reasonableness of the charge for the service, it matters not what the form of the contract may have been between the claimant and his immediate employer. Here, it is shown that the service was performed and that the price charged for the service was reasonable. It follows that there can be a recovery on the bond.

It is contended there can be no recovery upon the second cause of action, that is, no recovery for the services performed after the respondent had elected to quit work under the contract. While there was no particular agreement concerning the work, yet the subcontractor permitted it to go on without objection on its part, and it received the benefit of the work. A promise to pay the reasonable value of the service will be implied, and there was proof of its reasonable value.

It is objected that the recovery is too large because fractions of miles were called full miles, that is to

say, hauls less in length than one mile were called full miles, those in excess of one mile and less than two were called two miles and so on for the entire distances. A glance at the written contract will show that it is ambiguous in this respect—ambiguous in the sense, at least, that it does not cover the situation. Treating it as ambiguous, the trial court permitted evidence to show the custom in such cases, and the proofs were to the effect that the custom was in accord with the respondent's method of charging. We find no error in this.

The judgment is affirmed.

MOUNT, MAIN, PARKER, and HOLCOMB, JJ., concur.