[No. 27432.    Department One.    June 26, 1939.]

MARYLAND CASUALTY COMPANY *et al., Respondents,* v.
THE CITY OF TACOMA *et al., Respondents,* GLADDING
McBEAN & COMPANY *et al., Appellants.*[1]

[1]Reported in 92 P. (2d) 203.

*Bogle, Bogle & Gates, Donald E. Leland,* and *Morris & Dubuar,* for appellants.

*Peterson, Jackson & Hale* and *Wright & Wright,* for respondents.

MAIN, J.—January 14, 1936, The Steel Tank & Pipe Company of Oregon entered into a written contract with the city of Tacoma, whereby it agreed to furnish and install approximately 12,160 feet of steel pipe and erect certain structures. January 18, 1936, the pipe company sublet to Felix Arcorace and Joe Coluccio, doing business as partners under the name of Arcorace & Coluccio, all the work to be done under the general contract, except the fabrication of the pipe and a few minor items. The subcontract was filed with, and approved by, the city.

The work proceeded, and was completed and accepted by the city July 14, 1937. During the performance of the work, the city, under Rem. Rev. Stat., § 10320 [P. C. § 9727-1], retained, and later deposited in court, fifteen per cent of the contract price. The amount of this retained percentage was $36,211.48. When the work was completed, there were a large number of persons or corporations that had either performed labor or furnished material which went into the work and that had not been fully paid by the subcontractors.

The sureties on the principal contractor's bond brought an action in interpleader, making all the claimants and the subcontractors parties defendant. Three of these parties were the Gladding McBean & Co., Norris Bros., and the Contractors Machinery &

Storage Company. Each of these was given a judgment against the subcontractors and was disallowed any relief against the bond of the principal contractor or against the retained percentage; and, from the judgment thus entered, they appeal.

■ The first question is whether the appellants are entitled to relief against the principal contractor and its sureties, notwithstanding the fact that none of them, within ten days or at all, gave any notice to the principal contractor to the effect that they had commenced to deliver materials or supplies to be used in the work, as provided by Rem. Rev. Stat., § 1159-1 [P. C. § 9725]. Whether they were entitled to the relief, notwithstanding they had not given the required ten days' notice, depends upon whether, under the contract with the city, the subcontractors were agents of the principal contractor to the extent that they had a right to purchase material and supplies and charge the principal contractor and its sureties with liability.

The contract with the city provided that the specifications which had been prepared for the work were a part of "this agreement as fully as if set forth herein." In the specifications, under the heading, "General Specifications," and in subd. 9 thereof, there are certain definitions, including a definition of contractor and contractor's employees. Subdivision 33, under the same heading, covers the matter of subletting, and in this subdivision it is provided that the contractor shall give his special attention to the faithful prosecution of the work, and that he shall not sublet the whole or any part of the work to be done without the written consent or authorization of the city.

It is further provided that, if the contractor, without such previous written consent, sublets, the city, at its option, may revoke and annul the contract. A

later paragraph in the same subdivision provides that, when the contractor requests the city for permission to sublet the whole or any part of the work to be done, he shall file a copy of the contract which he proposes to enter into for subletting, with such information as will enable the commissioner (the city) to determine the responsibility and standing of the proposed subcontractor. It is stated that no subcontract will be considered unless the original contract between the contractor and the city is made a part thereof, nor unless the proposed subcontractor is in every way reliable and responsible and fully able to undertake the prosecution of the work which it is contemplated to sublet to him, and to complete the work in accordance with the specifications and to the satisfaction of the city.

If the definitions of contractor and contractor's employees in subd. 9 stood alone, it may be that it could be said that the subcontractors here were, in effect, the general agents of the principal contractor; and, this being true, it would not be necessary to give the ten days' notice, because, if the subcontractors were the agents of the principal contractor, the material and supplies would have been furnished, in effect, to it. However, taking subd. 33, which particularly covers the matter of subletting and authorizing a subcontract in accordance with the provisions thereof, it cannot be said that it was the intention that every subcontractor to whom any part of the work should be sublet would be the agent of the principal contractor and could charge it with liability for material and supplies purchased which went into the work. Arcorace & Coluccio were subcontractors, and not the general agent of the principal contractor.

The appellants, in support of their contention that the partnership was the agent of the principal con-

tractor, rely largely upon three cases from this court, which will now be noticed:

In the case of *Crane Co. v. Maryland Casualty Co.*, 102 Wash. 59, 172 Pac. 866, it was held that there was no subletting of the original contract because the subcontract was not consented to by either the state or the casualty company. In the case now before us, as already appears, the city consented to the subletting, and a copy of the contract was filed with it.

In *Cascade Const. Co. v. Snohomish County*, 105 Wash. 484, 178 Pac. 470, it was held that:

"There was no subletting of the work, because the subcontract was not filed as required by the contract."

In the case of *Rachow v. Philbrick & Nicholson*, 148 Wash. 214, 268 Pac. 876, the contract involved contained a provision that:

" 'Any sub-contractor shall be considered the agent of the contractor, and the latter shall be responsible for any indebtedness incurred by such agent'."

We have found no such provision in the contract under consideration in the case now before us. The trial court correctly denied relief against the principal contractor and its sureties.

The next question is whether, notwithstanding the ten days' notice was not given, the appellants are entitled to participate in the reserve percentage.

In Rem. Rev. Stat., § 1159 [P. C. § 9724] (Laws of 1915, chapter 28, p. 61, § 1), it is provided that, whenever any board, council, commission, or body acting for the state or any county or municipality shall contract with any person or corporation, such contracting person or corporation shall be required to make, execute, and deliver a bond, with two or more sureties, or with a surety company as surety, conditioned that such person or persons shall faithfully perform all the

provisions of the contract and pay all laborers, mechanics and subcontractors and materialmen, and all persons who shall supply such person or persons, or subcontractors, with provisions and supplies for the carrying on of the work.

It is further provided, in the same section, that any person or persons performing services or furnishing material to any subcontractor shall have the same right under the provisions of the bond as if such work, services or material were furnished to the original contractor.

Rem. Rev. Stat., § 1159-1 (Laws of 1915, chapter 167, p. 525, § 1), provides that every person, firm, or corporation furnishing supplies or provisions to be used in the construction, performance, carrying on, prosecution, or doing of any work for the state, or any county, city, town, district, municipality or other public body, shall,

". . . not later than ten days after the date of the first delivery of such materials, supplies or provisions to any subcontractor . . . deliver or mail to the contractor a notice in writing stating in substance and effect that such person, firm or corporation has commenced to deliver materials, supplies or provisions" for the work to be done, giving the name of the subcontractor.

In the same section, it is further provided that:

". . . no suit or action shall be maintained in any court against the contractor or his bond to recover for such material, supplies or provisions or any part thereof unless the provisions of this act have been complied with."

In 1921, the legislature passed an act (Laws of 1921, chapter 166, p. 657; Rem. Rev. Stat., § 10320), entitled:

"An Act regulating contracts for public improvements, fixing the percentages to be retained for the

protection of materialmen and laborers, giving a lien thereon, and providing for the foreclosure thereof."

In § 1 of this act, p. 657 (Rem. Rev. Stat., § 10320), it is provided that contracts for public improvements or work by the state, or any county, city, town, district, board, or other public body, shall provide, and there shall be reserved from the moneys earned by the contractor on estimates during the progress of the improvement or work, a sum equal to fifteen per cent of such estimates, which sum is to be retained by the state, county, city, town, district, board, or other public body, as a trust fund for the protection and payment of any person or persons, mechanic, subcontractor, or materialman who shall perform any labor upon such contract or the doing of said work, and all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work. It is then provided that:

"Said fund shall be retained for a period of thirty (30) days following the final acceptance of said improvement or work as completed, and every person performing labor or furnishing supplies towards the completion of said improvement or work shall have a lien upon said fund so reserved, provided such notice of the lien of such claimant shall be given in the manner and within the time provided in section 1161 of this Code as now existing and in accordance with any amendments that may hereafter be made thereto: . . . The provisions of this act shall be deemed exclusive and shall supersede all provisions and regulations in conflict herewith."

Prior to the passage of this latter statute, and in the case of *Denham v. Pioneer Sand & Gravel Co.*, 104 Wash. 357, 176 Pac. 333, it was held, in a case where the retained percentage was fixed by contract, that, in order for the creditors of the subcontractor to have a valid claim against either the bond or the retained

percentage, which was designated as a trust fund, it was necessary that the ten days' notice be given as required by § 1159-1.

The question, then, on this branch of the case, is: Has the statute referred to changed the rule of that case, so far as it applies to the retained percentage? The act of 1915 (the ten days' notice act), by its terms, applies only to those furnishing materials, supplies, or provisions to the subcontractor, and does not apply to one performing labor upon the work. The act of 1921, which covers the matter of retained percentages, applies, not only to those furnishing supplies, but, likewise, to those performing labor. The 1921 act covers only the retained percentage. In that act, nothing is said about relief against the bond of the principal contractor, and it is expressly provided that everyone performing labor or furnishing material, if they give the notice provided for (the thirty days' notice), within the time specified, "shall have a lien upon said funds so reserved." There is no condition here that the right to a lien depends upon a ten days' notice, as specified in the act of 1915.

It is further said that the provisions "of this act shall be deemed exclusive and shall supersede all provisions and regulations in conflict herewith." The statute does not say that it is necessary for one furnishing labor, material, or supplies to a subcontractor, in the performance of the contract, to give the ten days' notice in order to entitle him to participate in the retained percentage, and we cannot read into the statute something that the legislature did not place there. When the legislature stated that the provisions of this act should be deemed "exclusive" and supersede all provisions and regulations in conflict therewith, it would seem that it must have been intended that the right to relief should depend upon what the legislature here said.

It will be admitted that effect must be given to each and every part of the statute, but the court may not read into a statute anything which it may conceive that the legislature has unintentionally left out. *In re Phillips' Estate,* 193 Wash. 194, 74 P. (2d) 1015.

Cases such as *Sutherland v. Smith,* 123 Wash. 518, 212 Pac. 1060, and *Niemi v. Brewster,* 154 Wash. 181, 281 Pac. 488, which hold that there can be no relief for one against the principal contractor or his bondsman who furnishes material or supplies to a subcontractor and fails to give the ten days' notice, have no application in this connection.

The appellants were not entitled to any relief against the principal contractor or its bondsman, but were entitled to participate in the retained percentage.

The judgment will be affirmed, except in so far as it denied the right of the appellants to participate in the retained percentage; and, in this respect, it is reversed and the cause remanded, with direction to enter a judgment as herein indicated.

BLAKE, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.