[No. 852-3. Division Three. December 30, 1974.]

NORRIS INDUSTRIES, *Respondent,* v. HALVERSON-MASON
CONSTRUCTORS *et al., Appellants.*

MUNSON, J., dissents by separate opinion.

 *W. J. Thomas Ferguson* (of *Ferguson & Burdell*), for
appellants.

*James M. Danielson* (of *Hughes, Jeffers & Jeffers*), for respondent.

GREEN, C.J.—Plaintiff, Norris Industries, brought this action to foreclose a lien against the retention fund held by the Chelan County PUD pursuant to RCW 60.28.010 involving public construction. Defendants, Halverson-Mason Constructors and Urban, Inc., contested the foreclosure. These defendants appeal from an order granting summary judgment in favor of the plaintiff.

Defendants assign four errors: (1) Summary judgment should not have been granted because of unresolved issues of fact; (2) because plaintiff was not registered under the contractors' registration act, its complaint should have been dismissed; (3) plaintiff, a second-tier subcontractor, is too remote to recover from a retention fund; (4) the motion for summary judgment should have been determined by a judge of the Superior Court rather than a court commissioner sitting as judge pro tempore.

Halverson-Mason was the principal contractor for the Chelan County PUD as to certain construction work on the Rocky Reach Hydroelectric Project. They subcontracted a portion of the work to Urban, Inc. In turn, Urban subcontracted the installation of a fire protection system to National Industrial Corporation. National contracted with plaintiff to supply the fire protection system. Halverson-Mason paid Urban and Urban paid National the entire amount owing on its contract, but National became insolvent and plaintiff was not paid. As required by statute, the PUD retained a percentage of the monies due Halverson-Mason for the protection of those named in the statute. If plaintiff is entitled to foreclose its lien as the trial court found, it is undisputed that such lien was timely filed against the retention fund held by the PUD.

First, defendants contend that questions of material fact exist and summary judgment should not have been granted. Resolution of this issue depends upon the con-

struction given RCW 60.28.010. Under this statute, the PUD was required to hold back certain sums from monies earned by the prime contractor, Halverson-Mason:

> Contracts for public improvements or work, other than for professional services, by the state, or any county, city, town, district, board, or other public body, herein referred to as "public body", shall provide, and there shall be reserved by the public body from the moneys earned by the contractor on estimates during the progress of the improvement or work, a sum equal to ten percent of the first one hundred thousand dollars and five percent for all amounts over one hundred thousand dollars of such estimates, said sum to be retained by the state, county, city, town, district, board, or other public body, as a trust fund . . .

to protect and pay

> ■ any person or persons, mechanic, subcontractor or materialman who shall perform any labor upon such contract or the doing of said work, and [2] all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work, . . . *Every person* performing labor or *furnishing supplies* toward the completion of said improvement or work *shall have a lien* upon said moneys so reserved:
>
> . . .

(Italics ours.) Defendants insist that issues of fact exist as to whether plaintiff is entitled to recover under these provisions.

Defendants urge that the items furnished by plaintiff were either not lienable under the statute as a matter of law or an issue of fact exists as to what portion, if any, is lienable. They contend plaintiff can prevail only if the fire extinguisher system it sold National constitutes materials, rendering plaintiff a materialman under the statute. A description of the fire extinguisher system is contained in the affidavit of defendants' counsel, as follows:

> The system provided by Norris Industries, according to Mr. Robert's testimony, consisted of approximately 50 $CO_2$ Tanks. Attached to the tanks were various valves,

regulators, sensing devices and appurtenances. Norris Industries also provided nozzles, which screwed into mechanical piping installed by another contractor. The tanks, valves, regulators, sensing devices and other appurtenances were not fabricated into or connected into the structure. Instead, brackets which were provided by Norris Industries were screwed or bolted to the structure. The tanks and other items were then set down on the floor of the structure and were held in place by a saddle and clamp arrangement which projected from the brackets attached to the walls.

and in the oral argument of defendants' counsel:

The tank sits on the floor. Attached to a tank are some regulators and valves and a manifold system, devices which sense the existence of a fire and which makes this system work automatically to spread carbon dioxide—.

These various devices are attached to the tanks. *There comes out of the tanks a piping system which is attached to a piping system in the building* but runs into the generator housing. In the generator housing, as the diagram will show, there are pipes running around like this and at various places on the pipe are little T's and a nozzle screws into the T's. Mr. Roberts says that Norris Industries provided the brackets, the saddle, the clamp, the tank, the appurtenances attached to the tank; they didn't provide any of the mechanical piping that is part of the building, they didn't provide this piping, this stuff I am crossing out. They provided the nozzles that screw in.

(Italics ours.) These statements are uncontradicted.

In *Western Clinic & Hosp. Ass'n v. Gabriel Constr. Co.*, 168 Wash. 411, 414, 12 P.2d 417 (1932), the court, construing the predecessor retainage statute as to lienable items, said:

We have repeatedly defined materials as including such articles only as enter into and form a part of the finished structure. [Citations omitted.]

Under this definition of "materials," it is clear that the $CO_2$ equipment furnished by plaintiff "entered into and formed a part of the finished structure." While the tanks are removable for refilling purposes, they are just as essen-

tial a part of the total fire protection system as the pipes that run throughout the dam. In fact, they become a part of the system running throughout the dam when the nozzles are screwed into the pipes. Without this equipment, there would be no fire protection system. Hence, on the record before us, there is no issue of fact over whether the items furnished by plaintiff were lienable materials.

Further, defendants contend that the measure of plaintiff's recovery is the reasonable value of the materials furnished and not the contract price. It is urged that what is a reasonable value presents a question of fact. In support of their position, they rely upon *Maryland Cas. Co. v. Tacoma*, 199 Wash. 72, 87, 90 P.2d 226, 123 A.L.R. 799 (1939), where the court said:

> The rule has long been established in this state that, as against the bondsmen of the principal contractor, a subcontractor performing services or furnishing material cannot recover in excess of the reasonable value of the services performed or material furnished.

*Accord, Kongsbach v. Casey*, 66 Wash. 643, 120 P. 108 (1912); *Bishop v. T. Ryan Constr. Co.*, 106 Wash. 254, 180 P. 126 (1919); *Puget Sound Bridge & Dredging Co. v. Jahn & Bressi*, 148 Wash. 37, 268 P. 169 (1928).[1] The basis for this rule was expressed in *Kongsbach v. Casey, supra* at 644:

> We think clearly that the defendants Casey [principal contractor] and his surety should not be bound by the contract made with the subcontractor, unless it is made to appear that the services were reasonably worth the sum demanded. *They* were not in privity with the claimants and are entitled to make such defenses as are available, for their liability rests entirely upon the statute.

(Italic ours.)

---

[1]These decisions have been criticized as a minority rule by jurisdictions that permit recovery of the contract price by a subcontractor not in privity with the principal contractor and his surety, *Price v. H.L. Coble Constr. Co.*, 317 F.2d 312 (5th Cir. 1963); *Miller v. Commercial Elec. Constr. Inc.*, 297 A.2d 487 (Pa. 1972).

The central issue is whether this long-settled rule enunciated in cases arising under the bond statute, RCW 39.08.010,[2] should be controlling in actions to foreclose a lien against a retention fund, RCW 60.28.010. We hold in the negative.

 The remedy accorded a materialman under RCW 60.28.010 is distinct from that prescribed in RCW 39.08.010. *See Haley v. Brady*, 17 Wn.2d 775, 137 P.2d 505, 146 A.L.R. 859 (1943). RCW 39.08.010 creates a cause of action against the contractor and his surety; whereas, RCW 60.28.010 creates a trust "res" against which the materialmen are granted a right of lien analogous to the materialman's lien against private works under RCW 60.04.010[3] *et seq*. Recovery upon a lien against the retention fund is limited to the amount retained. *Hall v. Aetna Cas. Co.*, 161 Wash. 38, 296 P. 162 (1931); *North Pac. Bank v. Pierce County*, 24 Wn.2d 843, 167 P.2d 454, 164 A.L.R. 602 (1946). Similarly, recovery upon a lien against private works is limited by the value of the property improved. In contrast, there are no lien rights against public property. Hence, the legislature enacted RCW 60.28.010 requiring the public body to create a "res" against which a materialman could have a lien.

We believe the lien created against a retention fund is

---

[2] RCW 39.08.010 provides, in pertinent part:

"Whenever . . . any public body shall contract with any person or corporation to do any work . . . such . . . body shall require . . . a good and sufficient bond . . . conditioned that such person or persons shall faithfully perform all the provisions of such contract and pay all . . . materialmen, and all persons who shall supply such person or persons, or subcontractors, with provisions and supplies for the carrying on of such work . . . and any person or persons performing such services or furnishing material to any subcontractor shall have the same right under the provisions of such bond as if such . . . material was furnished to the original contractor: . . ."

[3] RCW 60.04.010 provides, in pertinent part:

"Every person . . . furnishing material . . . to be used in the construction . . . of . . . any . . . structure . . . has a lien upon the same for the . . . material furnished . . . whether . . . furnished . . . at the instance of the owner of the property subject to the lien or his agent; . . ."

more akin to the lien created against private works than the right of action created against a surety on a bond. Under the private lien statute it is generally held that the measure of recovery by a lienholder is the contract price. *Chavelle v. Island Gun Club,* 77 Wash. 304, 137 P. 511 (1914). This may have been the thinking of the parties in *J.D. English Steel Co. v. Tacoma School Dist. 10,* 57 Wn.2d 502, 503, 358 P.2d 319 (1961), where the claimant was awarded the contract price against a retention fund and no issue as to the measure of recovery was raised. *See also United States Fidelity & Guar. Co. v. E.I. Dupont De Nemours & Co.,* 197 Wash. 569, 85 P.2d 1085 (1939).

Therefore, we hold that the measure of recovery allowed in the foreclosure of private works liens, *i.e.,* the contract price, is the proper measure of recovery against a retention fund. Accordingly, we find no error in the trial court's award to plaintiff of the agreed contract price of $16,000.

██ Second, defendants contend that because plaintiff did not register under the contractors' registration act, RCW 18.27, plaintiff's complaint should have been dismissed. Defendants argue that plaintiff is a subcontractor because it used that term in its notice of claim of lien. We disagree. RCW 18.27.090 provides:

> This chapter shall not apply to:
>
> . . .
>
> (8) Any person who only furnished materials, supplies or equipment without fabricating them into, or consuming them in the performance of, the work of the contractor;

The established facts place plaintiff well within this exemption to the registration statute.

While the use of the term "subcontractor" in the notice of claim of lien may have been technically inappropriate, there is no evidence that defendants were misled to their detriment. The only purpose of the notice is to inform the recipient of the extent of an unpaid claim. Any form of notice is sufficient so long as it does not mislead another to its detriment. RCW 60.28.010(1); RCW 39.08.030-.060;

*Strandell. v. Moran,* 49 Wash. 533, 536; 95 P. 1106 (1908); *see Foremost-McKesson Sys. Div. v. Nevis,* 8 Wn. App. 300, 505 P.2d 1284 (1973).

■ . Third, defendants contend that plaintiff is a materialman to a second-tier subcontractor and is therefore too remote to recover from a retention fund. We disagree. The language of RCW 60.28.010 indicates a legislative intent to protect all who perform labor or supply materials to a public works project; and the cases are in accord. In *J.D. English Steel Co. v. Tacoma School Dist. 10, supra,* a subcontractor defaulted in payment for materials. Over the claim of the school district and principal contractor that only creditors of the principal contractor are entitled to a lien upon a retention fund, the court said, at page 504:

> In *Maryland Cas. Co. v. Tacoma,* 199 Wash. 384, 92 P. (2d) 203 (1939), we held that claimants who furnish labor or materials to a subcontractor participating in a public works project are entitled to share in the retained percentage. We adhere to the rule announced in the cited case.

*See Galvanizer's Co. v. State Highway Comm'n,* 8 Wn. App. 804, 509 P.2d 73 (1973).

■ Finally, defendants contend that the stipulation to argue the motion before the court commissioner sitting as a judge pro tempore does not extend, over defendants' objection, to the renewal motion for summary judgment. The record shows that the parties originally agreed that the motion for summary judgment could be heard by this judge pro tempore. The motion was argued and orally denied, with plaintiff being granted leave to renew its motion. Thereafter, plaintiff filed additional affidavits and defendants undertook discovery. Plaintiff then renewed its motion for summary judgment based upon the additional record and at the time set for hearing on the renewed motion, defendants objected to its being heard by the court commissioner sitting as a judge pro tempore. This objection was apparently discussed in chambers with the superior court judge and the parties returned to argue the renewed

motion before this pro tempore judge. It was not until plaintiff's renewed motion was granted that a formal order was entered. In these circumstances, the original stipulation remained in effect until the formal order was entered. *Cf. Chandler v. Doran Co.*, 44 Wn.2d 396, 267 P.2d 907 (1954). Ordinarily, a judge pro tempore is appointed to hear a particular matter to completion upon the consent of both parties. *National Bank v. McCrillis*, 15 Wn.2d 345, 130 P.2d 901, 144 A.L.R. 1197 (1942). We find no error.

Affirmed.

McINTURFF, J., concurs.

MUNSON, J. (dissenting in part)—I agree that the pivotal question before this court is whether this long-settled rule, in cases arising under RCW 39.08.010, should be applied to actions brought against a retention fund under RCW 60.28.010. However, I am constrained to hold that the present status of the law requires it should be so applied.[4] The same parties find protection under virtually the same language in both statutes. In one instance a bond is the fund set up to protect subcontractors and the public body, and in the other instance the bond is reinforced by a retainage fund held by the public body for its protection and for the protection of the subcontractors. I do not mean to infer, however, that the contract price may not also be the reasonable value of the materials. That determination is one of fact. Thus, the trial court erred in holding, as a matter of law, that plaintiff was entitled to its contract price rather than proceeding to a factual determination of the reasonable value of its materials. Summary judgment should not have been granted on this issue. I concur with the majority on the other issues presented.

---

[4] *Maryland Cas. Co. v. Tacoma*, 199 Wash. 72, 90 P.2d 226, 123 A.L.R. 799 (1939); *Puget Sound Bridge & Dredging Co. v. Jahn & Bressi*, 148 Wash. 37, 268 P. 169 (1928); *Bishop v. T. Ryan Constr. Co.*, 106 Wash. 254, 180 P. 126 (1919); *Kongsbach v. Casey*, 66 Wash. 643, 120 P. 108 (1912).