[No. 12416.   Department Two.   March 5, 1915.]

# THE STATE OF WASHINGTON, *on the Relation of State Board of Medical Examiners et al., Plaintiff,* v. C. W. CLAUSEN, *State Auditor, Respondent.*[1]

STATES—BOARD OF MEDICAL EXAMINERS — POWERS — EMPLOYMENT OF COUNSEL—"NECESSITY." The state board of medical examiners has no implied power to employ private counsel at the expense of the state, by reason of being charged with duties making such legal advice a necessity, when the law has made the attorney general or the prosecuting attorneys of the county the legal representatives of the board; since the term "necessity" in such case means a "legal necessity" and not an "actual necessity" by reason of the public attorneys refusing to perform their duties; hence allegations as to such refusal are immaterial.

SAME—BOARD OF MEDICAL EXAMINERS. Rem. & Bal. Code, § 8386 *et seq.,* as amended, being a complete act regulating the practice of medicine and the issuance of licenses therefor, and making certain violations of the act felonies or misdemeanors, and authorizing the state medical board to prosecute all persons guilty of violation of the act, but failing to expressly authorize the board to employ private counsel, and failing to provide any special punishments or procedure for prosecuting offenders, stands on the plane of the general criminal statutes as respects violations of the act and punishments therefor, and such duties therefore fall upon the prosecuting attorneys, and the state medical board has no authority to employ private counsel to perform such duties, notwithstanding that the board is authorized to "prosecute" offenders; nor can the board employ private counsel at the expense of the state for the purpose of securing legal advice, the constitution having made the attorney general the legal adviser of all state officers, which includes the members of such boards.

Application filed in the supreme court October 9, 1914, for a writ of mandamus to the state auditor to compel the issuance of a salary warrant for legal services rendered the state board of medical examiners.   Denied.

*George McKay* and *Max Wardall,* for relators.

*The Attorney General* and *Edward W. Allen, Assistant,* for respondent.

[1]Reported in 146 Pac. 630.

Fullerton, J.—This is an original application for a writ of mandamus. In the petition for the writ, it is alleged that one of the relators is the state board of medical examiners of the state of Washington, and the other "the regularly retained and employed attorney and legal adviser of said board;" that the respondent is the auditor of the state of Washington; that, on the 15th day of August, 1914, the board audited and allowed the account of the relator Wardall for his services as such attorney at the sum of $200, and issued to him a voucher therefor; that Wardall presented the voucher to the respondent and demanded a warrant on the state treasurer for the amount thereof, and that the respondent refused to issue the warrant on the ground that the medical board was without power to hire or employ private counsel at the expense of the state. It is further alleged that it is impossible for the board to properly discharge the duties imposed upon it by the statute creating it without the aid of legal counsel with whom it can at all times consult and who is conversant with the work of the board and the legal questions constantly arising out of such work, and that it has been the custom and practice of the board, since its creation by the statute of 1909, to employ and pay private counsel, as well as the practice of the medical boards, acting under like and similar statutes, existing prior to the enactment of the statute creating the present board.

The petition is accompanied with the affidavits of the president and secretary of the board. These set out in more detail the nature of the work of the board and the character of the matters coming before it for hearing and decision. In them the allegation is repeated that the work of the board cannot be successfully performed without the aid and assistance of counsel and the charge is made that this aid and assistance cannot be obtained, either from the office of the *Attorney General* or from the offices of the various prosecuting attorneys of the state. Indeed, in the affidavit of the president of the board, these officers are openly charged with neglect of

duty in this regard, and it is stated that "county attorneys will not look up evidence or prepare cases" against illegal practitioners of medicine, "and within the affiant's professional experience are not anxious to conduct these prosecutions;" and that "illegal practitioners may as well be permitted openly to practice if the board is compelled to look for results from the various county attorneys." The prayer of the petition is that a mandate issue directing the state auditor to issue the warrant demanded.

The auditor, in his return to the alternative writ, both answered and demurred to the petition. His answer consists of a denial of all of the allegations of the petition relative to the necessity of the board to employ private counsel, the allegations of inability, neglect, or refusal of the *Attorney General*, and the various prosecuting attorneys, to attend to the legal matters confronting the board. The demurrer suggests the question of the power of the medical board to employ private counsel for any purpose. Both sides request the court to send the case to a referee for the purpose of taking testimony, should it deem the determination of the truth of the disputed matters necessary to a proper disposition of the cause.

The cause is before us on the question raised by the demurrer. But before discussing this question, it is well to consider the effect of the allegations of the petition concerning the inability, neglect and refusal of the *Attorney General*, and the various prosecuting attorneys of the state, to attend upon and advise the board, and to prosecute violators of the provisions of the medical act. We cannot think these allegations material. They were inserted in the petition, no doubt, to show the necessity for the employment of private counsel. As will hereafter appear, there is no express provision in the act creating the medical board empowering it to employ private counsel. This power, if it exists at all, can only be inferred from the general powers conferred on the board; the power implied from the general grant of power to take such steps

as are reasonably necessary to the successful performance of the power conferred.

But conceding that the board may find it necessary in the performance of its imposed duties to have the advice and assistance, and is obligated by law to seek such advice and assistance from the *Attorney General* of the state, or from some one of the various prosecuting attorneys of the state, it cannot, merely because these officers are unable, or because they neglect or refuse to furnish it with such advice and assistance, employ private counsel for that purpose. The term "necessity" in such cases means "legal necessity" as distinguished from "actual necessity." In other words, if a person or board is charged by law with a specific duty, and the means by which the duty is to be accomplished are not specially provided for, the person or board so charged has the implied power to use such means as are reasonably necessary to the successful performance of the required duty, which in the present case might include the power to employ private counsel. But where a person or board is charged by law with a specific duty, and the means for its performance are appointed by law, there is no room for implied powers, and the means appointed must be followed, however inadequate may be the result. So, here, if the law has made the *Attorney General* and the several prosecuting attorneys of the state the legal representatives of the board of medical examiners, these are the only persons who can lawfully be paid for the work, no matter how indifferently they perform their duties. On the other hand, if these officers have not been constituted by law the legal representatives of the board, then the board may hire and pay with state funds such assistants in the way of legal counsel as it may find reasonably necessary to the performance of their duties. The disputed allegations of the petition, therefore, since they charge only neglect or omission of duty on the part of public officers, raise no issue material to the inquiry.

Passing to the principal question, we find that the board of medical examiners was created by the act of March 18, 1909.

Laws 1909, p. 677 (Rem. & Bal. Code, § 8386 *et seq.*).
This act was complete in itself and superseded all of the
then existing statutes on the same subject-matter. By its
terms, the board is empowered to determine what persons
shall be permitted to practice medicine and surgery, osteop-
athy, or "any other system or mode of treating the sick or
afflicted" within the state of Washington. The board is
authorized to issue licenses or certificates to those whom it
determines are entitled to practice. An applicant for a cer-
tificate or license to practice any of the enumerated methods
of treating the sick or injured may be refused such certificate
or license if he has been guilty theretofore of unprofessional
conduct, and any certificate or license duly issued may be re-
voked by the board for unprofessional conduct on the part of
the holder. Before, however, a certificate or license may be
refused an applicant, or before a certificate or license duly
issued can be revoked, the applicant or holder of the certifi-
cate or license must be summoned before the board and given
a hearing upon the charges preferred against him. From an
adverse decision of the board, the applicant or the holder of
the certificate or license is given the right of appeal to the
superior court, and either party may appeal to the supreme
court from an adverse decision by the superior court. Each
holder of a license or certificate must record the same with
the county auditor of the county in which he practices, and
must exhibit it to any citizen of the state who requests to see
the same; failure to do either of which constitutes a misde-
meanor. It is made a felony, punishable as forgery is pun-
ished, for any person to file for record, or attempt to file for
record, a certificate issued to another, falsely claiming him-
self to be the person therein named or the person entitled to
the same, and it is a misdemeanor for any person to practice
medicine or surgery, osteopathy, or the healing art in any
of its forms, without having a duly issued, unrevoked certifi-
cate or license. The act also authorizes the collection of
certain fees from applicants for licenses and certificates, and

formerly provided that such fees should be paid to the treasurer of the board "and used to defray the expenses and compensation of said board." This provision was, however, amended at the session of legislature in 1913 (Laws 1913, p. 256; 3 Rem. & Bal. Code, § 8393), and it is now provided that all money received by the board, or any member thereof, shall be paid to the state treasurer. The amendatory act also provides a compensation for the secretary and treasurer of the board, and a compensation for the several members thereof with their necessary expenses while in attendance upon the meetings of the board. It is also provided that "all such compensation and expenses, and all other expenses incident to the execution of this act shall be paid by the state treasurer upon warrants drawn by the state auditor upon the presentation of proper vouchers to be approved by the majority of said board, as in case of state officers;" and that "the said board is authorized to prosecute all persons guilty of a violation of the provisions of this act." The supplemental budget to the general appropriation act for the year 1913, carried an appropriation "for the expenses of" the board in the sum of $12,000.

From the foregoing epitome of the provisions of the acts relating to the medical board, it will be observed that nowhere in the act is the board expressly empowered to employ, at the expense of the state, private counsel to assist it in carrying out the provisions of the act. Nor can we discover anything in the language of the act from which it can be said that this power is impliedly given the board. It must follow, therefore, that, if the power exists at all, it arises from the necessities of the case; it arises because the services of counsel are necessary to enable the board to carry out the duties imposed upon it by the statute, and that such counsel is not otherwise provided for it by law. It is our opinion that the statute presents no such unusual conditions.

Turning again to the act, it is found that no special punishments are provided by it. Violations of certain of its pro-

visions are simply declared misdemeanors, and are, of course, punishable under the general statutes providing for the pun-. ishment of misdemeanors not otherwise prescribed.    The felonies created by the act are punishable as felonies are punishable under the general statutes.    Nor is any special method of prosecuting offenders against the provisions of the act provided for.    These must, therefore, be prosecuted according to the provisions of the general laws; if before a justice of the peace, by a complaint charging the particular offense; if before the superior court, by an indictment or information. It is clear, therefore, that these statutes, with respect to the manner of their enforcement, stand on a plane with the general criminal statutes of the state.    In fact, they form a part of the general criminal statutes of the state, and are to be enforced, in so far as court procedure is concerned, in the same manner and by the same officers as all such statutes are enforced.    We need not cite the statutes to show that this duty is imposed upon the public law officers of the state. On the *Attorney General* in certain instances, and on the prosecuting attorneys of the several counties of the state in others, is imposed the duty of prosecuting offenders against the laws.    The rights and powers of these officers in this respect are absolute in all cases where the statute has not specially granted the power to another, and, as we find no special grant of power to the medical board to employ special counsel to prosecute offenders against the act in question, we are forced to the conclusion that no such power exists.

Nor is the board without duly appointed legal advisers as to matters that pertain to the general administration of the statute.    As to all matters connected with the prosecution of offenders, they have the right to consult with the prosecuting attorney of the county in which the offender must be prosecuted.    As to the general administrative questions, the *Attorney General* is their legal adviser.    By the constitution and by the statute, the *Attorney General* is made the legal adviser of all state officers.    And while it may be true, as coun-

sel for the board argue, that the members of the medical board are not state officers under the strict definition of that phrase, it is true that they perform state functions and are state officers in the broader sense. We think the statute, in defining the duties of the *Attorney General*, used the term in the broader sense; that it intended to make that officer the official legal adviser of all persons and boards clothed with the duty of performing state functions, whether, technically speaking, they may or not be state officers.

But the act authorizes the board to prosecute all persons guilty of violating the provisions of the act, and it is said that this provision empowers them to employ private counsel for that purpose. We cannot, however, think it has that effect. The provision is not an uncommon one in statutes of like character. Like duties, within their respective jurisdictions, are imposed upon the labor commissioner, the state board of health, the state insurance commissioner, the game and fire wardens, and it is made the duty of school superintendents and directors, road supervisors, all sheriffs, constables and other peace officers, to make complaints of violation of certain laws, yet no one has heretofore supposed that these officers might employ private counsel at the expense of the state to aid them in the prosecution of their duties. The state has an interest in the selection of officers charged with the administration of its laws, and this interest is not to be deemed surrendered unless upon the clearest implication. As we said in *Ritchie v. State*, 42 Wash. 653, 85 Pac. 417: "A court is treading upon dangerous ground when it rests the authority of a public officer to bind the state on some unforeseen emergency or the law of necessity." See, also, *Young v. State*, 19 Wash. 634, 54 Pac. 36.

Our conclusion is that the state board of medical examiners is without power to employ, at the expense of the state, private counsel to assist them in the performance of their duties. The application for the writ of mandamus is therefore denied.

CROW, MOUNT, MAIN, and ELLIS, JJ., concur.