# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Application of
)
)
MARIE-CATHERINE SMITH,
a/k/a MARIE-CATHERINE KOHEN,
)
)
)
Respondent,
)
)
and
)
)
ELIKA KOHEN,
)
)
Appellant.
)

No. 71130-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 12, 2015

TRICKEY, J. — A trial court does not err in granting a petition to return minor children to their "habitual residence" pursuant to the Hague Convention on the Civil Aspects of International Child Abduction when the petitioner has demonstrated by a preponderance of the evidence that the children were wrongfully removed. Accordingly, we affirm the trial court's order granting Marie-Catherine Smith's petition to return the children to Canada and denying Elika Kohen's motion to dismiss.

## FACTS

The following facts are not in dispute. Kohen, a United States citizen, and Smith, a Canadian citizen, were married on February 1, 2010 in New York. At the time of the marriage, Kohen and Smith lived in Canada with Kohen's seven-year-old son from a former relationship, H.K. In August 2010, Kohen, Smith, and H.K. moved to Seattle where Kohen had a job opportunity. Kohen and Smith's daughter, A.M.K., was born on September 12, 2010 in Seattle. The couple struggled financially because Kohen soon

lost his job and Smith did not have authorization to work in the United States. Consequently, on February 5, 2012, Smith returned to Canada with H.K. and A.M.K. in order to live with her parents, while Kohen remained in the United States. On March 15, 2012, Smith gave birth to the couple's second daughter, L.M.K., in Canada. After Kohen rejoined the family in Canada in July 2012, Smith supported the family with her job managing a Starbucks because Kohen did not have authorization to work in Canada. At some point, Kohen and Smith discussed moving back to the United States. With Smith's consent, Kohen purchased round-trip airline tickets from Montreal to Seattle for himself, H.K., A.M.K., and L.M.K., departing on July 2, 2013, and scheduled to return on October 2, 2013. On August 12, 2013, Smith notarized a document stating the following:

> I, <u>Marie-Catherine H.A. Kohen, residing at 1800 Rue Crevier APT 4, Saint-Laurent, Quebec, H4L 2X5, Canada</u>, hereby appoint <u>Elika S. Kohen, residing at 3324 Wetmore Ave., Everett, WA, 98201, United States</u>, as my as my [sic] Attorney-in-Fact ("Agent") to act in my capacity to any and all of the following:
>
> 1.   Due to my temporary absence, (pending immigration to the United States), I am hereby affirming Elika S. Kohen's authority with the following extents, concerning the children: [H.K.] . . . [A.M.K.] . . . and [L.M.K.]:
>     a.   To make and maintain applicable life, health, and dental insurance policies.
>     b.   To make doctor's appointments and to make decisions for medical treatment.
>     c.   To file and make requests for United States and Canadian birth certificates, visas, and passports for our children.
>     d.   To file for and request Social Security Numbers within the United States, and Social Identification Numbers in Canada.
>     e.   To provide enrollment into school and childcare.
>     f.   To make travel arrangements when necessary.

2

The rights, powers, and authority, as my Attorney-in-Fact and "Agent," to exercise any and all of the rights and powers herein granted shall commence and be in full force and effect from <u>July 3rd, 2013</u>.[1]

Shortly thereafter the couple's relationship began to deteriorate and Smith told Kohen she no longer desired to move to the United States and wanted the children to remain with her in Canada. On September 27, 2013, Kohen filed a petition for dissolution in Snohomish County Superior Court.[2] Kohen did not return to Canada with the children using the return airline tickets on October 2, 2013. The following day, Smith filed an application for return of the children with the United States Department of State.

On November 1, 2013, Smith filed a petition in Snohomish County Superior Court asserting that Kohen had wrongfully removed A.M.K. and L.M.K. from their habitual residence in Canada and requesting their return under the Hague Convention on the Civil Aspects of International Child Abduction. In support of her petition, Smith attached her own sworn declaration in which she stated that during August and September 2013, after Kohen left for the United States with the children, he told her she would no longer be able to see the children, refused to allow her to speak to A.M.K. on the telephone, and informed her he would not bring the children back to Canada. Smith stated, "Had I known [Kohen] would do this, I would have never consented to his departure from Canada with our children."[3]

---

[1] Clerk's Papers (CP) at 39.
[2] The parties stipulated to a stay of the dissolution proceedings pending the outcome of the Hague Convention petition.
[3] CP at 149.

Kohen filed a response to the petition, consisting of an unsigned, unsworn declaration and several unauthenticated attachments, including nearly 50 pages of e-mails between the couple. Kohen also filed a motion to dismiss the petition, consisting of his own unsworn declaration and several unauthenticated attachments, some of which are the same as in his response to the petition.[4]

A hearing on Smith's petition was held on November 13, 2013.[5] The trial court granted Smith's petition and ordered A.M.K. and L.M.K. be returned to Canada. The trial court found:

1. The children were wrongfully removed from their habitual residence of Canada by the respondent father on or about October 3, 2013.

2. The petitioner mother had rights of custody, and was exercising those rights at the time of the wrongful removal of the children.

3. The application for return of the children was brought within one year of their removal.

4. The petitioner mother did not acquiesce or consent to the removal of the children.

5. The respondent father's claim of abuse is unsubstantiated, and even if substantiated, does not rise to the level of "grave harm" as contemplated by the Convention.

6. The respondent father's claim of significant danger in Canada is not substantiated.

7. The father shall turn over the children's passports to the mother's attorney by 5 pm on November 13, 2013. The children shall return to the

---

[4] Though the grounds upon which Kohen moved to dismiss the petition are not entirely clear from the record, Kohen's opening brief characterizes it as a CR 12(b)(6) motion to dismiss for failure to state a claim.
[5] Although it appears the trial court heard testimony, the record contains only declarations and documents submitted by the parties.

4

habitual residence of Canada within 72 hours, without interference. The mother's designee shall travel to the U.S. to retrieve the children.

8.    Neither party shall discuss the case with the children, other than to let them know that they will be returning to Canada with their mother.

9.    The costs and expenses of the mother's designee for her airfare, hotel, car rental, children's expenses, and similar expenses, shall be reserved for the Canadian court.

10.    Attorney's fees incurred by petitioner are reserved for the trial court in Canada.[6]

On the same day, the trial court denied Kohen's motion to dismiss the petition, and ordered Kohen to pay Smith $1,000 in attorney fees. Kohen appeals the trial court's orders granting Smith's petition, denying his motion to dismiss, and ordering attorney fees.

## ANALYSIS

This court reviews a trial court's findings of fact for substantial evidence. In re Marriage of Schweitzer, 132 Wn.2d 318, 329, 937 P.2d 1062 (1997). "Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the matter asserted." Katare v. Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). "The party challenging a finding of fact bears the burden of demonstrating the finding is not supported by substantial evidence." Nordstrom Credit, Inc. v. Dep't of Revenue, 120 Wn.2d 935, 939-40, 845 P.2d 1331 (1993). If substantial evidence supports the finding, it does not matter that other evidence may contradict it, because credibility determinations are left to the trier of fact and are not subject to review. State v.

---

6 CP at 13-14.

Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We review conclusions of law de novo. Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

A trial court's decision "is presumed to be correct and should be sustained absent an affirmative showing of error." State v. Wade, 138 Wn.2d 460, 464, 979 P.2d 850 (1999). The party presenting an issue for review has the burden of providing a record adequate to establish the errors claimed. Wade, 138 Wn.2d at 464; see also RAP 9.2, 9.9, 9.10. An "insufficient record on appeal precludes review of the alleged errors." Bulzomi v. Dep't of Labor & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994). Pro se litigants are held to the same standard as attorneys and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

Return of the Children

The United States is a party to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 49 (hereinafter Hague Convention). In 1988, Congress implemented the provisions of the Hague Convention in the International Child Abduction Remedies Act (ICARA), former 42 U.S.C. sections 11601-11610 (reclassified as 22 U.S.C. sections 9001-9011, effective Dec. 16, 2014). A primary goal of the Hague Convention is to secure the prompt return of children wrongfully removed to or retained in any contracting country. Hague Convention, art. 1; 22 U.S.C. § 9001. The Hague Convention's focus is not the underlying merits of a custody dispute but instead whether a child should be returned to

a country for custody proceedings under that country's laws. Holder v. Holder, 392 F.3d 1009, 1013 (9th Cir. 2004).

To establish that a child has been wrongfully removed or retained, a petitioner must establish, by a preponderance of evidence, that

> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, art. 3; 22 U.S.C. § 9003(e)(1)(A). If the removal or retention was wrongful, then the court must order the child returned to his or her habitual residence for a custody determination, unless the respondent can establish one of the following exceptions: (1) more than one year has passed since the wrongful removal or retention and the child is settled in his or her new environment; (2) the petitioning parent was not actually exercising custody rights at the time of the removal or retention; (3) the petitioning parent had consented to or subsequently acquiesced in the removal or retention; (4) the child objects to being returned and is of an age and maturity level at which it is appropriate to take account of his or her views; (5) there is a "grave risk" that the child's return "would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation;" or (6) the return of the child would be inconsistent with "fundamental principles . . . relating to the protection of human rights and fundamental freedoms". Hague Convention, arts. 12, 13, 20. The respondent

7

bears the burden of proving the first four exceptions by a preponderance of the evidence and the last two exceptions by clear and convincing evidence. 22 U.S.C. § 9003(e)(2).

Kohen challenges the trial court's finding that Canada was A.M.K. and L.M.K.'s "habitual residence." He argues that Canada was not the children's habitual residence because Smith clearly intended to move from Canada to the United States. He further claims that the trial court misapplied the law when it determined the children's habitual residence based on the "home state" concept of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW, rather than the Hague Convention.

Neither the Hague Convention nor ICARA defines the term "habitual residence." In determining whether a child has acquired a new habitual residence, there must first be a "'settled intention to abandon the one left behind.'" Holder, 392 F.3d at 1015 (quoting Mozes v. Mozes, 239 F.3d 1067, 1075-6 (9th Cir. 2001)). There must also be (1) an actual change in geography, and (2) the passage of an appreciable period of time, one sufficient for acclimatization. Mozes, 239 F.3d at 1078.

Though labeled as a finding of fact, the trial court's determination that the children's habitual residence is Canada is actually a conclusion of law. Holder, 392 F.3d at 1015. But the trial court's conclusion is supported by the facts in the record. On the date that Kohen took the children to Seattle, A.M.K. had lived in Canada for the past 17 months and L.M.K. had lived in Canada her entire life. Moreover, the evidence does not support Kohen's claim that the United States has become the children's habitual

residence. Though Smith and Kohen discussed moving to the United States with the children, because Smith ultimately told Kohen she wanted the children to live with her in Canada, their intentions regarding the move cannot possibly be described as "settled."

Similarly, there is no evidence in the record before us that the trial court misapplied the law when determining the children's habitual residence. Smith's memorandum of law supporting her petition accurately summarizes the factors a trial court is to consider in determining a child's habitual residence under the Hague Convention. Kohen does not provide a verbatim report of proceedings for the hearing, which may have provided more context for the trial court's decision-making process. In the absence of an affirmative showing of error, we presume the trial court's decision to be correct.

Kohen argues the trial court erred in ordering A.M.K. and L.M.K.'s return because Smith "was not actually exercising . . . custody rights at the time of removal or retention," or had "consented to or subsequently acquiesced in the removal or retention."[7] In support of this claim, Kohen relies on the notarized document signed by Smith giving him the power to enroll the children in daycare, make their medical appointments, and apply for their Social Security numbers while she remained in Canada.

The Hague Convention does not define the "exercise" of rights of custody. The Sixth Circuit has stated that "in the absence of a ruling from a court in the country of

---

[7] Br. of Appellant at 5 (emphasis omitted) (quoting Hague Convention, art. 13).

habitual residence," the "only acceptable solution . . . is to liberally find 'exercise' whenever a parent with de jure custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." Friedrich v. Friedrich, 78 F.3d 1060, 1065 (6th Cir. 1996) (Friedrich II). The court went on to hold that "if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child." Friedrich II, 78 F.3d at 1066.

Neither party disputes that Smith, as A.M.K. and L.M.K.'s mother, possessed custody rights with respect to the children. And the facts clearly indicate that Smith continued to exercise those rights during the time that A.M.K. and L.M.K. were in the United States with Kohen. For example, Smith attempted to maintain telephone contact with the children, but Kohen refused to allow her to do so. Moreover, Smith worked to ensure that the children's medical and educational needs would be met by giving Kohen the written authority to do things she could not while in Canada. There is no evidence in the record that Smith intended a "clear and unequivocal abandonment" of A.M.K. and L.M.K. by remaining in Canada and permitting Kohen to take the children to the United States.

The Hague Convention is equally silent on the terms "consent" and "acquiescence," but case law distinguishes the two defenses, providing that "[t]he consent defense involves the petitioner's conduct prior to the contested removal or retention, while acquiescence addresses whether the petitioner subsequently agreed to

or accepted the removal or retention." Baxter v. Baxter, 423 F.3d 363, 371 (3rd Cir. 2005) (citing Gonzalez-Caballero v. Mena, 251 F.3d 789, 794 (9th Cir. 2001)). When examining a consent defense, a court considers what the petitioner actually agreed to when allowing the child to travel outside of his or her country of residence and the scope of the petitioner's consent. Baxter, 423 F.3d at 371. A parent may consent to removal of a child for a period of time, under certain conditions or circumstances, but that does not make retention of the child beyond those conditions or circumstances necessarily permissible. Baxter, 423 F.3d at 370-1. A petitioner's conduct following the removal of a child is a key factor in ascertaining whether such consent was provided at the time of removal. Gonzalez-Caballero, 251 F.3d at 794. Acquiescence, on the other hand, has been held to require "an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time." Friedrich II, 78 F.3d at 1070 (footnotes omitted).

Kohen fails to meet his burden to prove the defense of consent or acquiescence by a preponderance of the evidence. Evidence in the record shows that Smith consented to the children's removal from Canada for a period of time and on the assumption that she would be able to stay in communication with them. But Kohen informed Smith that he would not return the children to Canada and cut off her contact with them. Because the condition on which Smith consented to the children moving to the United States was not met, there is no basis to conclude that she consented to Kohen's retention of the children in the United States. Moreover, Smith's conduct after

11

Kohen failed to return with the children is not consistent with that of a parent who has consented or acquiesced to her children remaining in the United States. The day after Kohen did not utilize the return airline tickets, Smith requested that the United States government intervene to secure the children's return. Because Kohen does not establish an exception to the children's return, the trial court did not err.[8]

Kohen argues the trial court erred in refusing to continue the hearing on the petition so that he could have more time to prepare. Because the record does not demonstrate that Kohen ever requested a continuance, we find no error.

Finally, Kohen contends that the proceedings violated his right to due process. Because Kohen fails to identify the basic components of a due process claim or support this claim with argument or relevant authority, we decline to address this issue.

Kohen's Motion to Dismiss

Kohen contends the trial court erred in denying his motion to dismiss the petition. We review a trial court's decision on a CR 12(b)(6) motion de novo. Cutler v. Phillips Petroleum Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994). A CR 12(b)(6) motion "questions only the legal sufficiency of the allegations in a pleading." Brown v. MacPherson's, Inc., 86 Wn.2d 293, 298 n.2, 545 P.2d 13 (1975). Dismissal is appropriate only if "it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery." Tenore v. AT&T Wireless Servs., 136 Wn.2d 322,

---

[8] Kohen further argues that his retention of the children in the United States was "unavoidable," because a temporary order entered in the dissolution action on September 23, 2013 prevented him from removing the children from Snohomish County, and this should thereby constitute an exception to their return. As Kohen was the party that initiated the dissolution action, this argument is unconvincing.

330, 962 P.2d 104 (1998). In other words, the purpose of CR 12(b)(6) "is to weed out complaints where, even if that which the plaintiff alleges is true, the law does not provide a remedy." Alexander v. Sanford, 181 Wn. App. 135, 142, 325 P.3d 341 (2014). Because Smith stated a cognizable claim that the children were wrongfully removed, the trial court did not err in refusing to dismiss the petition.[9]

Attorney Fees

Kohen assigns error to the trial court's imposition of attorney fees in relation to his motion to dismiss.[10] However, in his brief Kohen fails to offer any argument or authority supporting this assignment of error. Accordingly, we need not address the issue. RAP 10.3(a)(6).

Affirmed.

Trickey, J

WE CONCUR:

---

[9] Kohen argues that in the alternative, the trial court should have called for a more definite statement. This argument is meritless because Smith's petition is not legally insufficient, nor is there any evidence in the limited record before us that Kohen requested a more definite statement.

[10] Kohen also contends that the trial court awarded Smith attorney fees related to the Hague Convention petition. However, the record is clear that aside from the $1,000 imposed related to the motion to dismiss, the trial court reserved the issue of attorney fees for the trial court in Canada to determine.